# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-1241
_____

Cheryl Klinger; Linda Lange;      *
Gweniver Lay; Stacy Finn,         *
                                  *
        Appellants,               *
                                  *
        v.                        *
                                  *
Department of Corrections;        *
Harold W. Clarke, Director;       *
Larry Tewes, Assistant            *
Director, Nebraska Department     *
of Correctional Services and      *
former Acting Superintendent      *
of Nebraska Center for Women;     *
Victor Lofgreen, Former           *
Superintendent of Nebraska        *
Center for Women; Larry Wayne,    * Appeals from the United States
Superintendent of Nebraska        * District Court for the
Center for Women; Judith          * District of Nebraska
Danielsen, Psychologist,          *
Nebraska Center for Women;        *
Margaret Wehland, Medical         *
Nurse, Nebraska Center for        *
Women,                            *
                                  *
            Appellees.            *
                                  *
------------------------------    *
                                  *
State of Alabama; State of        *
California; State of Louisiana;   *
State of Maryland; State of       *
Minnesota; State of Missouri;     *
State of Nevada; State of New     *
Mexico; State of North Dakota;    *
State of South Dakota; State      *
of Vermont, State of Alaska,      *
                                  *
            Amici Curiae.         *

_____

No. 96-1243
_____


Cheryl Klinger; Linda Lange;     *
Gweniver Lay; Stacy Finn,         *
                                  *
          Appellees,              *
                                  *
     v.                           *
                                  *
Department of Corrections;        *
Harold W. Clarke, Director,       *
                                  *
          Defendants.             *
                                  *
Larry Tewes, Assistant            *
Director, Nebraska Department     *
of Correctional Services and      *
former Acting Superintendent      *
of Nebraska Center for Women;     *
Victor Lofgreen, Former           *
Superintendent of Nebraska        *
Center for Women,                 *
                                  *
          Appellants,             *
                                  *
Larry Wayne, Superintendent of    *
Nebraska Center for Women;        *
Judith Danielsen, Psychologist,   *
Nebraska Center for Women;        *
Margaret Wehland, Medical         *
Nurse, Nebraska Center for        *
Women,                            *
                                  *
          Appellees.              *
                                  *
-------------------------------   *
                                  *
State of Alabama; State of        *
California; State of Louisiana;   *
State of Maryland; State of       *
Minnesota; State of Missouri;     *
State of Nevada; State of New     *
Mexico; State of North Dakota;    *
State of South Dakota; State      *
of Vermont, State of Alaska,      *
                                  *
          Amici Curiae.           *

_____

Submitted:  September 9, 1996

Filed:  February 25, 1997
_____

Before McMILLIAN, MAGILL and MORRIS SHEPPARD ARNOLD, Circuit
    Judges.
_____

McMILLIAN, Circuit Judge.


     Women prisoners, incarcerated at the Nebraska Center for Women
(NCW), brought this § 1983 action in the United States District
Court[1] for the District of Nebraska, alleging, among other things,
that defendants, the Nebraska Department of Correctional Services
(DCS) and several DCS officials, violated their rights under the
equal protection clause and Title IX of the Education Amendments,
20 U.S.C. §§ 1681-1688, by failing to provide equal educational
opportunities for male and female Nebraska prisoners, and that
defendants violated their constitutional right of meaningful access
to the courts by failing to provide an adequate law library at NCW.
After holding a bench trial on liability issues, the district court
issued an opinion in <u>Klinger v. Nebraska Dep't of Correctional
Servs.</u>, 824 F. Supp. 1374 (D. Neb. 1993) (<u>Klinger I</u>), <u>rev'd</u>, 31
F.3d 727 (8th Cir. 1994) (<u>Klinger II</u>), <u>cert. denied</u>, 115 S. Ct.
1177 (1995), and certified certain questions to this court for
interlocutory review.  On appeal in <u>Klinger II</u>, we reversed the
district court's finding of an equal protection violation and
remanded the case to the district court, which thereafter issued
three more opinions.  <u>Id.</u>, 887 F. Supp. 1281 (D. Neb. 1995)
(<u>Klinger III</u>); <u>id.</u>, 902 F. Supp. 1036 (D. Neb. 1995) (<u>Klinger IV</u>);
<u>id.</u>, 909 F. Supp. 1329 (D. Neb. 1995) (<u>Klinger V</u>).  Following the

_____

     The Honorable Richard G. Kopf, United States District Judge
for the District of Nebraska.

-3-

district court's entry of final judgment, the parties filed the present appeal and cross-appeal. Plaintiffs appeal from the district court's judgment in favor of defendants on plaintiffs' Title IX claim. For reversal, plaintiffs argue that the district court erroneously concluded that our decision in Klinger II required judgment in favor of defendants on the Title IX claim. Individual defendants Victor Lofgreen and Larry Tewes cross-appeal from the district court's judgment in favor of plaintiffs on plaintiffs' access-to-courts claim, for which defendants Lofgreen and Tewes were held personally liable to pay $2.00 in nominal damages and plaintiffs were awarded $40,642.44 in attorneys' fees and expenses. For reversal, defendants Lofgreen and Tewes argue that (1) plaintiffs failed to establish a constitutional violation as a matter of law because there was no complete and systemic denial of access or because plaintiffs suffered no actual injury, (2) they are protected by qualified immunity from personal liability for damages, and (3) the award of attorneys' fees and expenses is unreasonable under Farrar v. Hobby, 506 U.S. 103 (1992). Upon careful review and for the reasons set forth below, we now affirm the district court's judgment in favor of defendants on plaintiffs' Title IX claim, reverse the district court's judgment in favor of plaintiffs on their access-to-courts claim, and vacate the award of attorneys' fees and expenses.

## Background

The background facts of this case are set forth in detail in the district court's opinion in Klinger I, 824 F. Supp. at 1380-86, and are partially and more briefly summarized in the remaining opinions cited above. For purposes of this appeal, the following is a summary of the procedural history of this case. In 1988, four NCW inmates, acting pro se, initiated this § 1983 action. The district court appointed counsel and certified the plaintiff class, which includes all persons incarcerated at NCW on or after January 1, 1988. NCW is the only Nebraska prison for women;

accordingly, all women incarcerated in Nebraska are housed at NCW.[2] In their amended complaint, plaintiffs alleged that the educational and vocational training opportunities at NCW were inferior to those of male inmates at the Nebraska State Penitentiary (NSP). Consistent with plaintiffs' limited factual allegations, the district court confined plaintiffs' equal protection and Title IX claims to a comparison between NCW and NSP. Klinger I, 824 F. Supp. at 1388 & n.14. Plaintiffs also alleged, among other things, that defendants had failed to provide NCW inmates with an adequate law library or assistance from persons trained in the law.

After the district court granted partial summary judgment to defendants, the case proceeded to trial, which the district court had bifurcated into a liability phase and a remedial phase. Following a four-week trial on liability issues, the district court concluded that plaintiffs had proven an equal protection violation, a Title IX violation, and a deprivation of their right of meaningful access to the courts. Id. at 1466-69. The district court found defendants Frank Gunter and Harold Clarke personally liable for the equal protection and Title IX violations, id. at 1466, and defendants Lofgreen and Tewes personally liable for the access-to-courts violation, notwithstanding their claims of qualified immunity, id. at 1468-69.

Pursuant to 28 U.S.C. § 1292(b), the district court then certified to this court three issues of law related to the equal protection claim. On interlocutory appeal, this court reversed the district court's finding of liability on the equal protection claim and dismissed that claim. Klinger II, 31 F.3d at 734. This court reasoned that "NSP and NCW are different institutions with

---

DCS also runs two co-ed work release centers which are not enclosed secured prisons and which the district court determined were not relevant to the issues in this litigation. See Klinger v. Nebraska Dep't of Correctional Servs., 887 F. Supp. 1281, 1282 n.2 (D. Neb. 1995).

different inmates each operating with limited resources to fulfill different specific needs. Thus, whether NCW lacks one program that NSP has proves almost nothing." Id. at 732 (citation omitted). "[C]omparing programs at NSP to those at NCW is like the proverbial comparison of apples to oranges." Id. at 733. This court thus concluded that plaintiffs' equal protection claim failed as a matter of law because inmates at NCW and inmates at NSP are not "similarly situated." Id.

After the case was remanded to the district court, plaintiffs sought permission to recharacterize their equal protection claims as Title IX claims. Klinger III, 887 F. Supp. at 1285. The district court instead sua sponte elected to reverse its earlier finding of a Title IX violation. Id. The district court reasoned that the holding of Klinger II destroyed the probative force of the evidence upon which it relied in deciding both the equal protection and the Title IX claims (i.e., the comparative inequality between NSP and NCW educational and vocational training programs). Id.

The case then proceeded to the second phase of the trial (the remedial phase) which, by this time, had been narrowed to assessing damages resulting from the access-to-courts violation. Following a bench trial, the district court set forth findings of fact and conclusions of law, Klinger IV, 902 F. Supp. at 1039-45, and established a schedule for resolving the issue of attorneys' fees, id. at 1045-46. On the access-to-courts issue, the district court found that the general inmate population at NCW had been completely and systematically denied meaningful access to the courts for the time period prior to January 1989. Id. at 1043. However, because there was no evidence that anyone suffered any actual injury as a result of the deprivation, and there was no evidence to show that defendants Lofgreen or Tewes acted deliberately or with reckless indifference to the rights of the general population prisoners, the district court awarded only $1.00 in nominal damages. Id. at 1043-44. The district court separately found that segregation and

orientation inmates were also completely and systematically denied meaningful access to the courts. Id. at 1044-45. The district court reasoned that, although those inmates theoretically could order law books, the privilege was meaningless because those inmates were not provided any legal assistance or access to a law library. Id. at 1045. The district court then awarded the segregation and orientation inmates $1.00 in nominal damages. Id. Citing Bounds v. Smith, 430 U.S. 817 (1977), and Reutcke v. Dahm, 707 F. Supp. 1121 (D. Neb. 1988), the district court also reaffirmed its earlier rejection of Lofgreen's and Tewes's qualified immunity defense. Klinger IV, 902 F. Supp. at 1040 (citing Klinger I, 824 F. Supp. at 1469).

Following the parties' submission of briefs on the attorneys' fees issue, the district court filed a written decision awarding plaintiffs $37,084.92 in attorneys' fees and $3,557.52 in expenses. Klinger V, 909 F. Supp. at 1342. The district court reasoned that, notwithstanding plaintiffs' recovery of only $2.00 in nominal damages, their success was not merely technical or de minimis and therefore they were not precluded from recovering attorneys' fees under Farrar v. Hobby. Klinger V, 909 F. Supp. at 1334. Thereafter, final judgment was entered. Plaintiffs timely appealed, and defendants cross-appealed.[3]

---

After the parties filed their appeals, the Prison Litigation Reform Act (PLRA) was signed into law. Defendants requested permission to file supplemental briefs addressing the applicability of the PLRA to the present case. Permission was granted. An amicus brief on this issue was also filed by the State of Missouri on behalf of numerous states which support defendants' position regarding the applicability of the PLRA. In addition, plaintiffs and defendants submitted letters to this court pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, bringing to our attention two recent Supreme Court decisions. Plaintiffs have cited United States v. Virginia, 116 S. Ct. 2264 (1996), and defendants have cited Lewis v. Casey, 116 S. Ct. 2174 (1996).

**Discussion**

Title IX claim

Plaintiffs argue that the district court erred when it <u>sua sponte</u> reversed its finding of a violation under Title IX, 20 U.S.C. § 1681(a),[4] upon concluding that such reversal was mandated by our equal protection analysis in <u>Klinger II</u>. The district court reasoned as follows.

> Because the Court of Appeals has held as a matter of law that "comparing programs at NSP to those at NCW is like the proverbial comparison of apples to oranges," <u>Klinger II</u>, 31 F.3d at 733, the evidence in this case, when reexamined in light of <u>Klinger II</u>, fails to establish a Title IX violation. This is specifically true because (1) the evidence of discrimination, intentional or otherwise, and whether viewed in light of the Equal Protection Clause or Title IX, is largely (if not totally) dependent upon a factual comparison of NSP with NCW to the exclusion of all other Nebraska prisons, <u>Klinger II</u>, 31 F.3d at 729; <u>Klinger I</u>, 824 F. Supp. at 1384 n.6 & 1388 n.14; and (2) Plaintiffs do not claim that the allegedly inferior programs at NCW result from discriminatory funding, since Nebraska spends more money per capita at NCW than at any other adult prison in its system. <u>Klinger II</u>, 31 F.3d at 731 n.2; <u>Klinger I</u>, 824 F. Supp. at 1392-93.
>
> In sum, if NSP is not factually comparable to NCW, then "[d]ifferences between challenged programs at the two prisons are virtually irrelevant because so many variables affect the mix of programming that an institution has." <u>Klinger II</u>, 31 F.3d at 733. Therefore, since the plaintiffs have presented no other relevant or persuasive evidence tending to prove a Title

---

20 U.S.C. § 1681(a) provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that . . . [listing exceptions which do not apply in the present case].

> IX violation, it follows that the plaintiffs have failed
> in their burden to prove that the NCW women were denied
> educational opportunities in violation of Title IX "on
> the basis of sex."

Klinger III, 887 F. Supp. at 1286-87.

We agree with plaintiffs insofar as they assert that the standard for finding a Title IX violation differs from the standard applicable to a constitutional equal protection claim. See, e.g., Jeldness v. Pearce, 30 F.3d 1220, 1226-27 (9th Cir. 1994), citing Canterino v. Wilson, 546 F. Supp. 174, 210 (W.D. Ky. 1982) (Title IX standard is "equality" as compared with the equal protection standard of "parity"), vacated on other grounds, 869 F.2d 948 (6th Cir. 1989). In other words, plaintiffs are correct to assert that their failure to prove an equal protection violation does not preclude their Title IX claim as a matter of law. See, e.g., Horner v. Kentucky High Sch. Athletic Ass'n, 43 F.3d 265 (6th Cir. 1994) (reversing grant of summary judgment for defendants on Title IX claim but affirming summary judgment for defendants on similar equal protection claim where facially neutral rule disparately impacted boys' and girls' interscholastic athletic programs but there was no evidence of discriminatory intent). We further agree with plaintiffs' argument that the "similarly situated" requirement applied in equal protection cases does not apply to Title IX analyses. Title IX provides, in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that [listing exceptions]." 20 U.S.C. § 1681(a).[5] In our opinion, Congress has indicated, by

To the extent that exceptions are to be recognized, Congress has specifically enumerated certain exemptions in 20 U.S.C. § 1681(a)(2)-(9). Notably, the statute does not exempt correctional institutions, although it does expressly exempt -- among other types of entities -- religious schools, military schools, fraternities, sororities, voluntary youth organizations,

its enactment of § 1681(a) and by the specific language employed therein, that female and male participants within a given federally-funded education program or activity are presumed similarly situated for purposes of being entitled to equal educational opportunities within that program or activity. Because Title IX is only concerned with conditions of gender discrimination and inequality within federally-funded educational programs or activities, the question of whether males, as a group, are otherwise similarly situated to females, as a group, need not be considered in this narrow context.[6]

Nevertheless, we disagree with plaintiffs' assertion that, in the present case, they may properly assert a Title IX claim by comparing educational opportunities available to female prisoners at NCW with educational opportunities available to male prisoners *only* at NSP. Title IX prohibits gender-based inequality or discrimination "under any education program or activity receiving Federal financial assistance." Title IX's definition of "program or activity," 20 U.S.C. § 1687, provides in pertinent part:

---

and beauty pageants. "When a statute lists specific exemptions, other exemptions are not to be judicially implied." Jeldness v. Pearce, 30 F.3d 1220, 1225 (9th Cir. 1994) (referring to exemptions in 20 U.S.C. § 1687(a)(3)-(9)); see also Canterino v. Wilson, 546 F. Supp. 174, 210 (W.D. Ky. 1982) (noting that Congress was "certainly aware" that non-discrimination statutes such as Title IX "could result in administrative problems in many areas" and, accordingly, some exceptions were made in 20 U.S.C. § 1687(a)(1)-(9); under these circumstances, a court cannot impose a special exception for correctional institutions), vacated on other grounds, 869 F.2d 948 (6th Cir. 1989).

Accordingly, we disagree with the D.C. Circuit's assumption in Women Prisoners v. District of Columbia, 93 F.3d 910, 927 (D.C. Cir. 1996), that "the court's Title IX and equal protection analyses both depend on findings that [female prisoners and male prisoners to whom they were compared] were similarly situated."

For the purposes of this chapter, the term "program or activity" and "program" mean all of the operations of --

(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

(B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

. . . .

any part of which is extended Federal financial assistance, except that [stating an exception that does not apply in the present case].

The legislative history of § 1687 contains the following explanation:

For education institutions, the bill provides that where federal aid is extended anywhere within a college, university, or public system of higher education, the entire institution or system is covered. If federal aid is extended anywhere in an elementary or secondary school system, the entire system is covered.

For State and local governments, only the department or agency which receives the aid is covered. Where an entity of state or local government receives federal aid and distributes it to another department or agency, both entities are covered.

. . . .

For other entities established by two or more of the above-described entities, the entire entity is covered if it receives any federal aid.

S. Rep. No. 100-64, 100th Cong., 2d Sess. 4 (1988), reprinted in 1988 U.S.C.C.A.A.N. (Legislative History) 3, 6 (summary of the bill). In other words, the purpose of § 1687 was "to make clear

-11-

that discrimination is prohibited throughout entire agencies or institutions if any part receives Federal financial assistance." Id.[7]

In the present case, the subset of Nebraska prisons comprised of NCW and NSP, clearly does not constitute a "program or activity" within the meaning of § 1687. The Nebraska prison system as a whole, however, does qualify as a "program or activity" within the statutory definition. See 20 U.S.C. § 1687(1)(A) (the term "program or activity" means "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government" which receives federal funds). It is undisputed that DCS is the recipient of federal funds. See Klinger I, 824 F. Supp. at 1432 (noting parties' stipulation).

It is beyond controversy that male and female prisoners may lawfully be segregated into separate institutions within a prison system. Gender-based prisoner segregation and segregation based upon prisoners' security levels are common and necessary practices. When considering single-sex prisons, the only logical and workable application of the definition of "program or activity" under Title IX requires comparison of educational opportunities for female and male prisoners within the entire system of institutions operated by a state's federally-funded correctional department or agency, taking into account the objective differences between the male and female prison populations and such penological and security considerations as are necessary to accommodate in this unique

---

The legislation was deemed to reverse the Supreme Court's decision in Grove City College v. Bell, 465 U.S. 555 (1984), which had narrowed Title IX's application to only those specific education programs and activities which directly received federal funds. See S. Rep. No. 100-64, 100th Cong., 2d Sess. 5-6 & 11-16 (1988), reprinted in 1988 U.S.C.C.A.N. (Legislative History) 3, 7-8 & 13-18.

context.[8]  See Jeldness v. Pearce, 30 F.3d at 1228-29 (taking into consideration differences between circumstances of female and male prison populations in Oregon prison system and holding that "[a]lthough the programs need not be identical in number or content, women must have reasonable opportunities for similar studies and must have an equal opportunity to participate in programs of comparable quality").  This is not to say that no comparison can be made, consistent with Title IX, where there are significant differences between male and female prison populations within a state's correctional system, such as unequal population sizes and lengths of stay.  Rather, equal opportunities must be afforded consistent with those differences.  See id.  Because plaintiffs' comparison of the educational opportunities at NCW to those at NSP fails to provide a meaningful comparison of educational opportunities for male and female prisoners in the Nebraska prison system as a whole, the district court correctly concluded that plaintiffs' evidence was not sufficiently relevant or persuasive to prove a violation of Title IX.  See Klinger III, 887 F. Supp. at 1287.  We therefore affirm the district court's judgment on the Title IX claim.

Access-to-courts claim

     On cross-appeal, defendants Lofgreen and Tewes argue that the district court erred in holding that plaintiffs had been denied meaningful access to the courts during the period of January 1988 to January 1989.  They refer to the Supreme Court's 1977 landmark decision in Bounds v. Smith, which essentially held that a state could afford prisoners meaningful access to the courts by providing either access to an adequate law library or adequate assistance from persons trained in the law.  430 U.S. at 828.  It is

_____

     In addition, co-ed institutions may not discriminate on the basis of sex in providing educational opportunities to inmates within a given institution.

-13-

undisputed that NCW inmates were not provided any assistance from someone with legal training until January 1989. The issue in this case focuses on plaintiffs' access to an adequate law library. Describing the purported law library as "a disorganized pile of books stored in a small room," the district court held that "the NCW law library at all pertinent times was so disorganized that the condition of the law library amounted to a complete and systematic denial of access to the courts under Bounds, even though the general population inmates at NCW had physical access to the library." Klinger IV, 902 F. Supp. at 1043. Thus, the district court found a constitutional violation notwithstanding plaintiffs' inability to show that any NCW inmate was hindered or precluded from engaging in legal activity or suffered a monetary loss as a consequence of the deprivation. Id. at 1043-45. Citing Jones v. James, 38 F.3d 943, 945 (8th Cir. 1994), the district court explained "[a] complete and systematic denial of an inmate's constitutional right of access to the courts is such a fundamental constitutional deprivation that it is injury in and of itself for liability purposes without a showing of actual injury or actual prejudice." Klinger IV, 902 F. Supp. at 1041.

Defendants Lofgreen and Tewes argue that the present case is more like Schrier v. Halford, 60 F.3d 1309 (8th Cir. 1995), where this court held that actual injury or prejudice must be shown if the denial of access is not complete and systemic. They suggest that there was at least some access to a law library because the general population inmates had access to the "disorganized pile of books stored in a small room," and the segregation and orientation inmates could request books. Lofgreen and Tewes also rely on the Supreme Court's very recent decision in Lewis v. Casey, 116 S. Ct. 2174 (1996), for the proposition that actual injury or prejudice must be shown even if the denial of access is complete and systemic.

Upon careful review, we hold that plaintiffs' access-to-courts claim fails as a matter of law under Lewis v. Casey, which was decided after the district court rendered its decision in the present case. In Lewis v. Casey, the Supreme Court held, based upon principles of standing, that actual injury must be proven in order to prevail on an access-to-courts claim. Id. at 2179-80 ("[i]nsofar as the right vindicated by Bounds is concerned, 'meaningful access to the courts is the touchstone' . . . and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his [or her] efforts to pursue a legal claim"). Accordingly, even though plaintiffs did show a complete and systemic denial of access to a law library or legal assistance prior to January 1989, plaintiffs' claim fails as a matter of law because none of the inmates at NCW suffered actual injury or prejudice as a result of that denial of access. See Klinger IV, 902 F. Supp. at 1043. We therefore reverse the district court's judgment on the access-to-courts claim and vacate the award of attorneys' fees and expenses.[9]

## Conclusion

For the foregoing reasons, we affirm the district court's judgment in favor of defendants on plaintiffs' Title IX claim, reverse the district court's judgment in favor of plaintiffs on their access-to-courts claim, and vacate the award of attorneys' fees and expenses.

---

Because we hold that the district court erred in finding that a constitutional access-to-courts violation had occurred, we need not address the issues of qualified immunity, the excessiveness of the award of attorneys' fees and expenses, or the applicability of the Prison Litigation Reform Act.

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.