**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 16, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SCOT HOLLONBECK; JOSE
ANTONIO INIGUEZ; JACOB
WALTER JUNG HO HEILVEIL; VIE
SPORTS MARKETING, INC., a
Georgia corporation,

       Plaintiffs - Appellants,

v.

UNITED STATES OLYMPIC
COMMITTEE, a federally-chartered
corporation; U.S. PARALYMPICS,
INC., f/k/a United States Paralympic
Corporation, a Colorado non-profit
corporation,

       Defendants - Appellees,

              and

MARK E. SHEPHERD, SR.,

       Plaintiff - Appellant,

v.

UNITED STATES OLYMPIC
COMMITTEE, a corporation,

       Defendant - Appellee.

----------------------------

DISABILITY RIGHTS EDUCATION

No. 07-1053 and 07-1056

AND DEFENSE FUND; DISABILITY
RIGHTS ADVOCATES; NATIONAL
FEDERATION OF THE BLIND;
LEGAL CENTER FOR PEOPLE
WITH DISABILITIES; RAFAEL
IBARRA; KARIN KORB; TATYANA
McFADDEN,

        Amici Curiae.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. Nos. 03-cv-1364-JLK and 99-CV-02077-JLK)**

---

Amy Robertson of Fox & Robertson, P.C., Denver, Colorado (and Timothy P. Fox of Fox & Robertson, P.C., Denver, Colorado; Kevin W. Williams, Legal Program Director of Colorado Cross Disability Coalition, Denver, Colorado, with her on the briefs), for Plaintiffs - Appellants.

Christopher Handman of Hogan & Hartson, L.L.P., Washington, D.C. (Jeffrey S. George, John W. Cook, and Anne H. Turner of Hogan & Hartson, L.L.P., Colorado Springs, Colorado, with him on the brief), for Defendants - Appellees.

Samuel R. Bagenstos, St. Louis, Missouri, filed a brief for Amici Curiae.

---

Before **KELLY**, **HOLLOWAY**, and **HOLMES**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

In these consolidated appeals, paralympic athletes appeal the district court's dismissal of their claims under § 504 of the Rehabilitation Act against the United States Olympic Committee ("USOC").  In 07-1053, Plaintiffs-Appellants Scot Hollonbeck, Jose Antonio Iniguez, and Jacob Walter Jung Ho Heilveil appeal

the district court's grant of a motion to dismiss in favor of the USOC on their §

504 claim. In 07-1056, Plaintiff Mark Shepherd appeals the district court's grant

of summary judgment in favor of the USOC on his § 504 claim. As both cases

raise identical legal issues, we consolidated the cases for briefing and submission.

Prior to our disposition, Mr. Shepherd and the USOC stipulated to a dismissal of

the appeal in 07-1056 under Fed. R. App. P. 42(b). Our jurisdiction arises under

28 U.S.C. § 1291, and we affirm.


Background

The USOC is a federally-chartered corporation that has exclusive

jurisdiction over U.S. participation in three athletic competitions: the Olympic

Games, the Paralympic Games, and the Pan American Games. 36 U.S.C. §§

220502, 220503(3)(A). Under the Ted Stevens Olympic and Amateur Sports Act

("ASA") as amended, id. §§ 220501–220529, Congress has charged the USOC to

"obtain for the United States, . . . the most competent amateur representation

possible in each event of the Olympic Games, the Paralympic Games, and the

Pan-American Games." Id. § 220503(4).

The first Paralympic Games were held in 1960. Now the Paralympic

Games immediately follow the Olympic Games in the same host city and involve

between 1,100 and 4,000 athletes. Plaintiffs are all elite paralympic athletes who

have competed in at least one Paralympic Games. Plaintiffs are wheelchair racing

paralympians. U.S. Paralympians have been very successful compared to their Olympic counterparts with 42% of the Paralympians winning medals in 2000 and 75% winning medals in 2002 (compared to 16% of Olympians winning medals in both 2000 and 2002). Aplt. App. at 241.

To achieve its mission under the ASA, the USOC provides Athlete Support Programs which include various types of grants, tuition assistance, and health insurance benefits. The criterion that the USOC uses to distribute the benefits under its Resource Allocation Policy is that the applicant must be an athlete who is "eligible to represent the United States and who intend[s] to compete, if selected, in the next Olympic or Pan American Games." Id. at 110.

Plaintiffs challenge the USOC's policy of providing Athlete Support Programs only to Olympic team members, to the exclusion of Paralympic team members, as violating § 504 of the Rehabilitation Act. The district court consolidated two separate cases for oral argument which the parties and the court agreed raise identical legal issues under Title III of the Americans with Disabilities Act ("ADA"), and § 504 of the Rehabilitation Act: Hollonbeck v. USOC, No. 07-1053, on a motion to dismiss; and Shephard v. USOC, No. 07-1056, on cross-motions for summary judgment. The district court ruled for the USOC on the Title III and § 504 claims in both cases and entered final judgment pursuant to Fed. R. Civ. P. 54(b) on those claims. Prior to our disposition, Mr. Shepherd and the USOC stipulated to the dismissal of the appeal in 07-1056

pursuant to Fed. R. App. P. 42(b).  Plaintiffs Hollonbeck, Iniguez, and Heilveil only appeal the district court's dismissal of their § 504 claims.

On appeal, Plaintiffs argue that (1) the relevant universe for analysis should be all amateur athletes over which the USOC has responsibility; (2) they are "otherwise qualified" for the Athlete Support Programs; (3) the USOC's policy discriminates against them; and (4) the USOC's policy has the effect of screening out amateur athletes with disabilities.

## Discussion

We review the grant of a motion for summary judgment de novo, applying the same standard as the district court.  Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1112–13 (10th Cir. 2007).  Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We review the grant of a Rule 12(b)(6) motion to dismiss de novo as well, considering whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1974 (2007).  All facts alleged in the Hollonbeck complaint are assumed to be true in reviewing the motion to dismiss.  The parties stipulated to a set of facts in Shepherd for the purpose of the cross-motions for summary judgment.  Aplee. Br. at 5 n.1.  Because the facts are undisputed, we consider whether Plaintiffs state a claim or whether the USOC is

entitled to judgment as a matter of law.

Section 504 of the Rehabilitation Act states: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). A prima facie case under § 504 consists of proof that (1) plaintiff is handicapped under the Act; (2) he is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff. Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1151 (10th Cir. 1999).

Plaintiffs first argue that the relevant universe for analysis is all amateur athletes over which the USOC has responsibility, and the district court erred in restricting its discrimination analysis to the Olympics. Plaintiffs argue that the ASA's use of the term "amateur athlete" and § 504's definition of "program or activity," in light of the history of the definition and precedent applying Title IX, compel an analysis of the USOC programs for Olympic, Pan American, and Paralympic athletes as a whole. Thus, Plaintiffs argue that we should compare the USOC's treatment of all amateur athletes, no matter the competition in which they compete.

The ASA defines "amateur athlete" to be "an athlete who meets the eligibility standards established by the national governing body or paralympic

-6-

sports organization for the sport in which the athlete competes." 36 U.S.C. § 220501(b)(1). In 1998, the ASA was amended to give the USOC jurisdiction and responsibility over United States participation in the Paralympic Games in addition to the Olympic and Pan American Games. See 36 U.S.C. § 220503; S. Rep. 105-325 (1998). However, the ASA as amended does not direct the USOC's activities in any detail with respect to Olympic or Paralympic athletes other than requiring it to "obtain . . . the most competent amateur representation possible in each event" of the three competitions. 36 U.S.C. § 220503(4). The mere use of the term "amateur athlete" in the statute does not enlarge the relevant universe to include all athletes under the USOC's purview.

The cases that Plaintiffs rely upon also do not support analyzing the USOC's three programs as a whole. First, Plaintiffs rely on Klinger v. Department of Corrections, where women prisoners sued the Nebraska Department of Corrections under Title IX for failing to provide equal educational opportunities for male and female prisoners. 107 F.3d 609, 611 (8th Cir. 1997). The prisoners compared the educational opportunities available at their facility with the opportunities available at one specific male facility. Id. at 612. The court rejected the comparison holding that Title IX requires comparison of opportunities for male and female prisoners within the entire prison system taking into account the objective differences between the two populations and other relevant penological and security considerations. Id. at 615–16.

-7-

Plaintiffs' reliance on <u>Klinger</u> to alter § 504's definition of "program or activity" is misplaced.[1]  The case only holds that, under Title IX, the comparison between only the female facility and one specific male facility is not meaningful.  <u>See</u> <u>id.</u> 615–16.  A meaningful comparison requires viewing the jails in the context of the security, penological, and size differences among the various facilities.  This holding does not support Plaintiffs' theory, and the reasoning in <u>Klinger</u> contradicts Plaintiffs' argument.  The court noted that differences in programs between jails are permissible when considering the different circumstances in each jail.  <u>See</u> <u>id.</u> at 616.  Thus, the case's reasoning suggests that the USOC's three programs should only be compared considering the significant distinctions between each program in purpose, scope, success, and all other relevant differences.

Plaintiffs also rely on two ADA cases to suggest an analysis of the USOC as a whole: <u>Rodde v. Bonta</u>, 357 F.3d 988 (9th Cir. 2004), and <u>Concerned Parents to Save Dreher Park Center v. City of West Palm Beach</u>, 846 F. Supp. 986 (S.D.

---

[1]  In <u>Grove City College v. Bell</u>, the Supreme Court held that receipt of federal funds by a college's financial aid office did not trigger institution-wide Title IX coverage because the financial aid office was the "program or activity receiving Federal financial assistance." 465 U.S. 555, 570–72 (1984) (quoting 20 U.S.C. § 1681(a)).  The Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28, abrogated the Supreme Court's holding in <u>Bell</u> and broadened the Court's narrow definition of "program or activity" to expand the application of Title IX, the Rehabilitation Act, Title VI, and the Age Discrimination Act to an entire institution if any part of the institution receives federal funds.  There is no dispute that the Rehabilitation Act applies to all of the USOC's programs, so this analysis is inapposite here.

Fla. 1994).  Both cases are readily distinguishable because they involve the consolidation of services for the disabled at a single facility and then cancellation of those services.  See Rodde, 357 F.3d at 998 (noting these similarities in two cases).  These cases did not involve separate programs with separate eligibility requirements—they involved the provision of health and recreation services and the cancellation of those services for the disabled on a county-wide basis.  Cf. Does 1-5 v. Chandler, 83 F.3d 1150, 1155 (9th Cir. 1996) (concluding that a Hawaii general assistance program is functionally two programs—one for needy families and one for the needy disabled—and holding that "[t]he ADA does not require equivalent benefits in different programs").  Nothing in the analysis of these two cases supports a conclusion that the USOC's programs should be analyzed as a whole.

The additional Title IX precedent cited by Plaintiffs is not applicable here because it is based on a regulatory framework unique to the Title IX context.  Title IX regulations recognize that separation based on gender may be necessary thus requiring an institution-wide analysis to determine whether a Title IX violation has occurred.  See e.g., 34 C.F.R. § 106.41(b), (c); Roberts v. Colo. State Bd. of Agric., 998 F.2d 824, 829–32 (10th Cir. 1993).  Therefore, the relevant universe for analysis under § 504 is the individual programs under the USOC's umbrella.  Plaintiffs must show that they are otherwise qualified for the Athlete Support Programs and that the program discriminates against them.

-9-

Second, Plaintiffs argue that they are "otherwise qualified" for the Athlete Support Programs because they are amateur athletes under the ASA. A plaintiff is "otherwise qualified" under the Rehabilitation Act if he "is able to meet all of a program's requirements in spite of his [disability]." Se. Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979). Normally, if a plaintiff is unable to meet a program's requirements, a court must consider whether reasonable modifications or accommodations may be made that do not fundamentally alter the program. See Sch. Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 288 n.17 (1987); Alexander v. Choate, 469 U.S. 287, 300 (1985). Plaintiffs' argument requires us to accept a premise that we already rejected, namely, that the relevant universe for analysis is all amateur athletes. In the alternative, Plaintiffs contend that the requirement of being on the Olympic team is not an "essential eligibility requirement" to qualify for the Athlete Support Programs. 28 C.F.R. § 41.32(b). Plaintiffs argue that the USOC could open the benefits to Paralympic athletes and that doing so would further the USOC's program as a whole. However, § 504 is not the vehicle to compel discretionary acts of administrators absent discrimination.

Third, Plaintiffs argue that the USOC's policy of excluding Paralympic athletes from Athlete Support Programs is both facially discriminatory and discriminatory by proxy. Even if Plaintiffs were "otherwise qualified" for the benefits, the USOC's policy does not discriminate against Plaintiffs by reason of

their disability. First, Plaintiffs err in contending that the eligibility requirements for the Athlete Support Programs are intentionally discriminatory. The criterion that the USOC uses to distribute the benefits under its Resource Allocation Policy is that the athlete must be "eligible to represent the United States and . . . intend to compete, if selected, in the next Olympic or Pan American Games." The policy, on its face, clearly does not contain an explicit requirement of not being disabled. Cf. Bangerter v. Orem City Corp., 46 F.3d 1491, 1500 (10th Cir. 1995) (considering a city zoning ordinance for group homes for the disabled that "facially single[d] out the handicapped and appl[ied] different rules to them").

Plaintiffs also contend that the program discriminates against Paralympic athletes by proxy as the policy specifically excludes Paralympic athletes and the term "Paralympic athletes" is a proxy for amateur athletes with disabilities. The designation of "Olympic athlete" as a requirement for Athlete Support Programs is not a proxy for non-disabled athletes because there is no fit between being an Olympic athlete and not being disabled. The requirement of being an Olympic athlete is not "directed at an effect or manifestation of a handicap." McWright v. Alexander, 982 F.2d 222, 228 (7th Cir. 1992). Thus, the requirement to be an Olympic athlete to be eligible for the Athlete Support Programs is not discriminatory to Paralympic athletes "by reason of [their] disability." See 29

-11-

U.S.C. § 794(a).[2]

Fourth, Plaintiffs argue that the USOC's policy has the effect of screening out amateur athletes with disabilities. Plaintiffs' argument appears to allege that the USOC's policy impermissibly creates a disparate impact on disabled athletes, thus violating § 504. The Supreme Court has held that disparate impact, by itself, does not state a prima facie case under § 504. Choate, 469 U.S. at 299. Rather, actionable disparate impact requires analysis of whether the individual is otherwise qualified and whether reasonable accommodations may provide meaningful access. See id. at 299–301. Plaintiffs raise no additional argument here that we do not address above.

The dissent concludes that Plaintiffs are "otherwise qualified" for the Athlete Support Program because § 504 defines "program or activity" to include "all of the operations of" a covered entity. 29 U.S.C. § 794(b). However, Congress included the phrase "all of the operations of" a covered entity in § 504 to ensure that § 504 applies to an institution as a whole once any part of the institution receives federal funds. See supra note 2; see also DeVargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377, 1384–85 (10th Cir. 1990). The phrase does not create a parity requirement across an institution's individual programs

---

[2] Plaintiffs also refer in their briefs to a "separate benefit" regulation in 28 C.F.R. § 41.51(b)(1)(iv), and note that it is irrelevant to our analysis. We agree that it is irrelevant to our analysis for a different reason—Plaintiffs are not "qualified" as required by the regulation.

(unlike the requirements under the specialized Title IX regulations). Further, the dissent's reading of the statute would change the eligibility requirements set by the USOC—being an Olympic team member—altering the nature of the program. Courts are not free to rewrite eligibility requirements but must analyze whether a plaintiff is "otherwise qualified" against the requirements set by the covered entity. See Davis, 442 U.S. at 413–14 (rejecting a challenge to a nursing program because the requested modifications would have fundamentally altered the purposes and eligibility requirements of the program set by the college). Courts must ask whether reasonable modifications or accommodations may be made that do not fundamentally alter the program, see Choate, 469 U.S. at 300, or whether the requirement is not an "essential eligibility requirement" to qualify for the benefits or program, 28 C.F.R. § 41.32(b).

The dissent also argues that only extending the benefits at issue to Olympic athletes "has a discriminatory effect" against Paralympic athletes. However, disparate impact, by itself, does not state a prima facie case under § 504. Choate, 469 U.S. at 299. Further, our holding clearly does not permit denying benefits on the basis of gender, as the dissent suggests, because such a classification would be facially discriminatory. Here, the classification is facially neutral and is not "directed at an effect or manifestation of a handicap" as required for proxy discrimination. McWright, 982 F.2d at 228.

We sympathize with Plaintiffs' efforts to obtain benefits similar to those

-13-

received by their Olympic counterparts.  However, we cannot modify the Rehabilitation Act to reach a result in their favor absent statutory or regulatory authority to import, wholesale, Title IX regulations and precedent into § 504.  <u>See Choate</u>, 469 U.S. at 293 n.7.  Plaintiffs should seek a remedy with the legislative or executive branches, not the courts.

AFFIRMED.

Nos. 07-1053 & 1056, *Hollonbeck v. U.S. Olympic Committee*
**HOLLOWAY**, Circuit Judge, dissenting:

I respectfully dissent. Section 504 of the Rehabilitation Act provides that a qualified individual with a disability may not, solely because of his disability, be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). What the statute forbids is exactly what has occurred and is occurring here. This defiance of plain legislative intent is crystal-clear from the congressional statement that the Paralympics are "the Olympics for disabled amateur athletes." S. Rep. No. 105-325 at 2, 1998 WL 604018 (1998).

*The issues presented.*

A prima facie case under section 504 requires proof (1) that the plaintiff has a disability; (2) that plaintiff is otherwise qualified to participate in the program; (3) that the program receives federal money; and (4) that the program discriminated against the plaintiff. *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1151 (10th Cir. 1999). In these appeals it is not contested that Plaintiffs have disabilities and that the USOC receives federal money. Therefore, the questions before us are whether the Plaintiffs are "otherwise qualified" to participate in the program and whether the USOC discriminated against the Plaintiffs.

*The plaintiffs are qualified to participate in the program.*

Quite obviously, this court cannot answer the first question without determining what "the program" is in this case. Indeed, resolution of these appeals turns on whether the USOC is operating one "program" or separate programs, one for the disabled and one for the able-bodied. The clear answer to that question has been provided by Congress. Section 504 defines "program or activity" to include "all of the operations of" the covered entity. 29 U.S.C. § 794(b).[1] Plaintiffs are qualified to participate in the program; they are recognized as elite paralympic athletes whose competition in the Paralympic Games is, Congress has mandated, to be promoted by the USOC.

Thus, this case can and should be resolved by simple application of the plain language of the statute, and this court should reverse the judgment of the district court. The majority reaches the wrong result because its analysis goes off the track at the outset by failing to follow the statutory definition of "program." As noted by the majority, Congress specifically amended the Rehabilitation Act and other statutes to broaden the definition of "program or activity." Maj. op. at 8, n.2. But the majority inexplicably ignores the definition, insisting that the definition is of no moment because it is undisputed in this appeal that the Act

_____

[1]The district court expressed substantial doubt about whether the USOC is a "covered entity." That question is not before this court, however, as the USOC has not argued that the judgment should be affirmed on the alternative ground that it is not subject to the Act.

-2-

"applies to all of the USOC's *programs* . . . ." *Id*. (emphasis added).[2]

This use of the plural reveals the circular nature of the majority's analysis. The underlying issue (easily resolved by the plain language of the statute) is whether, in examining the USOC's challenged activities, we should consider the USOC as operating a single program or several separate ones. The majority incorrectly *assumes* – there is certainly no explanation for the approach – that we are dealing with separate programs. And it is only by ignoring the statutory definition and making this assumption of dealing with separate programs that the majority is able to assert that the unequal treatment afforded to the Plaintiffs is permissible.

Not only does the majority ignore the statutory definition of "program," but its assumption that separate programs are involved exonerates the USOC for doing just what the Supreme Court instructs must *not* be done – defining the benefit "in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled . . . ." *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

*The USOC's program discriminates against the plaintiffs.*

Plaintiffs are subject to discrimination by being denied access to benefits

---

[2]Indeed, the majority even accuses Plaintiffs of trying to "alter" section 504's definition of "program or activity" by discussing the reasoning of *Klinger v. Dept. of Corrections*, 107 F.3d 609 (8th Cir. 1997). I fail to see how Plaintiffs are trying to "alter" the definition. Plaintiffs *rely* on the legislative definition of "program," while the majority ignores it.

that are provided to Olympic and Pan American Games athletes who are not disabled. The USOC's practice of providing health insurance and other benefits to Olympic and Pan American Games athletes, but not Paralympic athletes, clearly has a discriminatory effect. Section 504 prohibits not only intentional discrimination but, I am satisfied, also the use of criteria or methods of administration such as those involved here that have the *effect* of subjecting people with disabilities to discrimination. 28 C.F.R. § 41.51(b)(3)(1). *See also Alexander v. Choate*, 469 U.S. at 299.[3]

Denying benefits to Plaintiffs because they are athletes training for the Paralympic Games, and not the Olympic or Pan American Games, is a proxy for discriminating against them because of their disabilities. The majority's assertion that "there is no fit between being an Olympic athlete and not being disabled," maj. op. at 11, demonstrates the faulty aim of its analysis. Presumably the majority would not countenance the denial of equal benefits based on gender. Yet, if such blatant discrimination existed, even then it could be said that there was "no fit" between being an Olympic athlete and being male. The USOC has shown four examples in one hundred years of disabled athletes who have competed in the Olympics or Pan American Games. The exceptions prove the

---

[3]In *Choate*, the Court assumed without deciding that section 504 reaches conduct that has a disparate impact on the disabled, after having noted compelling reasons to conclude that Congress intended such an interpretation and that all the circuits that have reached the issue had reached that conclusion. 469 U.S. at 295-97 & n.17. In the instant appeal, the defendants do not contend otherwise.

rule: The policy of awarding benefits to athletes training for the Olympics or the Pan American Games while excluding those training for the Paralympic Games discriminates against the disabled. The reason that courts inquire about the "fit" between a practice and a class of protected individuals is because the fact that a practice does not discriminate against *every* member of a protected class is not sufficient to show that members of the protected class have the meaningful access to which they are entitled. *See Lovell v. Chandler*, 303 F.3d 1039, 1054 (9th Cir. 2002).

For these reasons I am compelled to respectfully but emphatically dissent.