Lisa DORSEY, ON BEHALF OF
a minor, J.D., Plaintiff,

v.

PUEBLO SCHOOL DISTRICT 60, and
Board of Education of Pueblo School
District Sixty, Defendants.

Civil Action No. 15–cv–0094–WJM–CBS

United States District Court,
D. Colorado.

Signed August 12, 2016

Collin Joseph Earl, Earl & Earl, PLLC, Colorado Springs, CO, for Plaintiff.

Courtney B. Kramer, Eric Michael Ziporin, Vikrama Shiva Chandrashekar, Senter Goldfarb & Rice, LLC, Denver, CO, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

William J. Martínez, United States District Judge

In this disability discrimination case, Plaintiff Lisa Dorsey, on behalf of her minor daughter, J.D. ("Plaintiff"), brings this action against Defendants Pueblo School District 60, Board of Education of Pueblo School District 60, and John Doe, an unknown Pueblo School District teacher. (ECF No. 30.)

The Court previously dismissed all of Plaintiff's claims, but allowed Plaintiff to amend her claims under Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. §§ 701 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (ECF No. 39.) Plaintiff has since filed an amended § 504 claim (ECF No. 43–1), and Defendants have filed a motion to dismiss that single remaining claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 47).

For the reasons set forth below, Defendants' Motion is denied.

## I. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007).

In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.' " *Id.* (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

## II. BACKGROUND

The following facts and allegations are gathered from Plaintiff's Second Amended Complaint ("the Complaint"). (ECF No. 43–1.) Plaintiff is a minor child who was formerly enrolled at Corwin International Magnet School in Pueblo, Colorado ("Corwin"). (*Id.* ¶ 6.) As relevant here, Plaintiff was a student at Corwin during the 2013–14 school year. (*Id.* ¶ 4.)

Plaintiff suffers from "progressive muscular/skeletal weakness," for which she had several orthopedic surgeries prior to enrolling at Corwin. (*Id.* ¶ 6.) She also suffers from asthma and hypoglycemia. (*Id.*) The latter is sufficiently serious that it can give rise to "fainting, dizziness, and weakness." (*Id.*)

## A. 504 Plan

Shortly after enrolling at Corwin, on or around September 10, 2013, Plaintiff and her parents met with Corwin staff, who determined that Plaintiff was eligible for accommodation under Section 504 and developed a formal set of accommodations (the "504 Plan"). (ECF No. 43–1 at 4–5, ¶¶ 7–9.) Corwin also developed a Classroom Health Care Plan ("Health Care Plan") in conjunction with the 504 Plan. (*See id.* at 4–6, ¶¶ 7–10.)[1] The 504 Plan directed that "Related Staff will be familiar with details in the health care plan." (ECF No. 43–2 at 6.)[2]

As to Plaintiff's hypoglycemia, the Section 504 referral form submitted by Corwin's counselor stated that Plaintiff's hypoglycemia "causes low blood sugar which can lead to dizzyness, confusion, [she] may become lethargic[,] and [she] may pass out." (*Id.* at 4.) The 504 Plan therefore recognized that Plaintiff "needs to have access to snacks to prevent an episode" (*id.* at 6), and provided that she was "allowed to eat a snack when needed to prevent an episode of hypoglycemia" (*id.* at 6); likewise, the Health Care Plan stated that she "will be allowed to eat in any class" (*id.* at 9). The 504 Plan noted she "will have the snacks in her backpack." (*Id.* at 6.)

As to Plaintiff's physical limitations, the 504 Plan and Health Care Plan recognized that Plaintiff "cannot participate in any high impact activities in P.E." and can "set her own pace in other activities." (*Id.* at 6.) The Health Care Plan also reiterated that Plaintiff "should not participate in any high-impact activities such as running and jumping," and that "[s]trenuous activity should be avoided." (*Id.* at 8.)

Following a November, 21 2013 meeting, Plaintiff's 504 Plan was updated to "include more specifics on snacks and some considerations on weight bearing limitations." (ECF No. 43–2 at 2.) This update also allowed, "[w]hen necessary, for Plaintiff to wear a 'boot' for foot stabilization," and for early access to the hallways to move between classes and to use a different building entrance. (*Id.* at 1.)

## B. Alleged § 504 Violations

Plaintiff alleges that three kinds of conduct infringed on her rights under § 504, each summarized in turn below.

### 1. Bullying

First, Plaintiff alleges bullying by other students. "Early in the school year," another classmate began calling Plaintiff names, including "freak" and "cripple." (ECF No. 43–1 ¶ 13.) This escalated to physical assaults. (*Id.*) On at least one

---

1. The Section 504 Plan and Health Care Plan are docketed as attachments to Plaintiff's Complaint (ECF No. 43–2) and the Court considers them a part of the pleading in ruling on the motion to dismiss. Fed. R. Civ. P. 10(c); *see also Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005) ("a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute.").

2. It is not clear whether the Health Care Plan was developed when the 504 Plan was first adopted on September 10, 2013 or when it was updated on November 21, 2013. Plaintiff alleges that the school nurse presented the Health Care Plan in November. (ECF No. 43–1 at 5, ¶ 9.) However, the documents attached to the Complaint (which are themselves somewhat duplicative, and not always clearly dated) include a copy of the 504 Plan dated September 10, 2013, stating "staff will be familiar with details in the health care plan." (ECF No. 43–2 at 13.) Any ambiguity in this chronology does not alter the Court's conclusions below.

occasion the other student choked Plaintiff, then when confronted by a teacher, explained Plaintiff's difficulty breathing by telling the teacher that Plaintiff was having problems with her hypoglycemia. (*Id.*) The bullying student became part of a "mean girls" clique who would regularly strike Plaintiff in the side, calling this "tasering." (*Id.*) The other students also stole the snacks Plaintiff was allowed to keep with her as part of her 504 Plan. (*Id.* ¶ 14.) According to Plaintiff, this occurred on a daily basis beginning "[a]s early as September 2013."

In November 2013, Plaintiff informed her mother of this bullying and her mother met with Corwin's school counselor. (*Id.* ¶ 15.) However, according to Plaintiff, following this meeting, "nothing was done ... and there was no recognizable consequences or changes in behavior brought to" the bullying students. (ECF No. 43–1 ¶ 15.)

In December 2013, Plaintiff began wearing a special "CAM boot" [3] to school, after which, "the nickname 'cripple'" for Plaintiff "caught" among the bullying students. (ECF No. 43–1 at 7–8, ¶ 7.) Around this time, the other students also began to send Plaintiff messages/images via Snapchat "mocking her physical disabilities." (*Id.*)

### 2. Snacks

Plaintiff also alleges problems with the access to food provided by her 504 Plan. First, on August 27, 2013, Plaintiff was sent to the school office for dizziness and was picked up by her mother. The school secretary informed Plaintiff's mother that school policy did not allow students to eat snacks. Plaintiff was unable to return to school for two days after this incident. (ECF No. 43–1 at 9, ¶ 16.)

On October 15, 2013, Plaintiff forgot her lunch, so her sister brought it to the school office, "and explained the importance of getting the food to Plaintiff immediately because of Plaintiff's hypoglycemia." (ECF No. 43–1 at 10, ¶ 18.) However, "Plaintiff did not receive her lunch for almost three hours." (*Id.*)

In addition, according to Plaintiff, her technology teacher "refused to allow Plaintiff on a continuing basis to eat in her classroom stating ... 'the other students are not allow[ed],'" and "'I won't allow it.'" (*Id.* at 10, ¶ 20.) And, as noted above, other students stole Plaintiff's snacks or lunch, allegedly on a "daily" basis beginning in September 2013.

### 3. Physical Education Class

Finally, Plaintiff alleges non-compliance with her 504 Plan in her Physical Education ("PE") class. In November 2013, Plaintiff's "regular physical education teacher 'forced' Plaintiff to participate [in] basketball drills which were not only difficult for Plaintiff to complete, but led to additional issues with Plaintiff's classmates[,] [who] became 'upset' with Plaintiff because she was 'slowing them down' because of her physical disabilities." (ECF No. 43–1 at 11, ¶ 23.) Thereafter, Plaintiff alleges that:

> Plaintiff after class approached her regular physical education teacher and explained to her that she was physically unable to participate in the exercises because of her disability. At this time, the regular physical education teacher acknowledged Plaintiff's disability and told her to complete the tasks anyway or "I know that you cannot do this, but do it a[ny]way I don'[t] want to fail you."

(ECF No. 43–1 at 11–12, ¶ 23.)

Finally, on or about February 27, 2014, there was a substitute teacher in Plaintiff's

---

**3.** CAM stands for "Controlled Ankle Move-   ment."

PE class and she "was instructed to participate in a human 'pyramid.'" (ECF No. 43–1 at 10, ¶ 21.) During this exercise, Plaintiff became dizzy, fell, and was injured. (ECF No. 43–1 at 10–11, ¶¶ 21–22.)

Plaintiff alleges that in addition to the specific meetings she describes between her parents and Corwin staff (in September 2013, November 2013, and April 2014), "there were daily instances of phone calls regarding the bullying," and Plaintiff's (and her parents') concern with "disregard for the 504 plan in classes." (ECF No. 43–1 at 12, ¶ 24.)

In April 2014, Plaintiff's parents had a meeting with the principal and another teacher at Corwin who "had personal knowledge of prior bull[y]ing of Plaintiff." (*Id.* at 8, ¶ 8.) Shortly thereafter, they withdrew Plaintiff from Corwin.

## III. ANALYSIS

### A. Section 504 Claim

The Court granted Defendants' previous motion to dismiss as to all Plaintiff's claims. (ECF No. 39.) However, in its prior Order, the Court noted that it could not determine whether Plaintiff's § 504 claim "could support a plausible claim for relief if given greater factual context and support," and "whether Plaintiff would be able to bolster her allegations related to the human pyramid and the snacks with more specific references to her 504 Plan, what exactly it prohibited, and what the offending employees knew at the time of the alleged harm." (ECF No. 39 at 22.) Thus, the Court allowed Plaintiff to amend her § 504 and ADA claims. Plaintiff's Complaint now brings a single claim for violation of § 504. (ECF No. 43–1.)

In relevant part, § 504 provides:

No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794.

■ As set out in the Court's prior Order (ECF No. 39 at 19–20), "[a] prim a facie case under [Section] 504 consists of proof that (1) plaintiff is handicapped under the Act; (2) he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008).

Defendants make no argument regarding the first three elements of Plaintiff's § 504 claim, but argue that "there remains no link between the instances of discrimination, [Plaintiff's] alleged disability and Defendants' conduct," and that Plaintiff therefore has not adequately pled intentional discrimination. (*Id.* at 6.)

■ Plaintiff is "obligated to show that [s]he was otherwise qualified for the benefits [s]he sought and that [s]he was denied those solely by reason of disability." *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (internal quotation marks omitted). To state a claim for relief, Plaintiff must show intentional discrimination by Defendants. However, intentional discrimination does not require proof of "personal animosity or ill will." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999). Instead, "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Id.* at 1153; *see Alexander v. Choate*, 469 U.S. 287, 296, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) ("discrimination against the handi-

capped is primarily the result of apathetic attitudes rather than affirmative animus").

■■ "The test for deliberate indifference in the context of intentional discrimination comprises two [elements]: (1) knowledge that a harm to a federally protected right is substantially likely, ... and (2) a failure to act upon that ... likelihood." *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009) (citation omitted). "[F]ailure to act is a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* (internal quotation marks omitted).

The Court evaluates each of Plaintiff's three factual allegations in turn.

### 1. Bullying (Disability–Based Student–on–Student Harassment)

■ Bullying claims are typically cognizable under Title IX. However, "[s]everal courts have permitted plaintiffs to maintain a claim under ·... Section 504 for disability-based student-on-student harassment." *Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cnty., Okla.*, 960 F.Supp.2d 1254, 1266 & n.4 (N.D. Okla. 2013) (citing cases). "Specifically, drawing on the Supreme Court's decision in *Davis v. Monroe County Board of Education*, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), courts have held that 'a school district's deliberate indifference to pervasive, severe disability-based harassment that effectively deprived a disabled student of access to

the school's resources and opportunities would be actionable under Section 504 and Title II [of the ADA].' " *Wright v. Carroll Cnty. Bd. of Educ.*, 2013 WL 4525309, at *15 (D. Md. Aug. 26, 2013) (quoting *K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F.Supp.2d 343, 360 (S.D.N.Y. 2005)).[4]

"Under this framework, a five-part test has been established that a plaintiff must satisfy in order to impose liability on a school district for disability-based student-on-student harassment: '(1) the plaintiff is an individual with a disability, (2) he or she was harassed based on that disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment, (4) the defendant knew about the harassment, and (5) the defendant was deliberately indifferent to the harassment.' " *Sutherlin*, 960 F.Supp.2d at 1267 (quoting *S.S.*, 532 F.3d at 454).

"The Tenth Circuit has not had occasion to adopt this test for claims similar to those at issue here." *Id.* at 1267. However, the Court's prior order in this case cited to *Sutherlin*, effectively inviting Plaintiff to amend her pleading to state a claim for relief on this basis. (ECF No. 39 at 21.) Defendants cite no cases concluding that such a claim cannot proceed under § 504 (given sufficient allegations and facts), and the Court now explicitly holds that Plaintiff may pursue a § 504 claim for disabili-

4. *See also, e.g., S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008) (recognizing "a disability-based peer-on-peer harassment claim" arising under § 504); *D.A. v. Meridian Joint Sch. Dist. No. 2*, 289 F.R.D. 614, 628–29 (D. Idaho 2013) ("Based upon the holding in *Davis*, federal courts have extended peer-on-peer harassment claims to the disability context." (citing additional cases)); *Werth v. Bd. of Dirs. of the Pub. Sch. of Milwaukee*, 472 F.Supp.2d 1113, 1127 (E.D. Wis. 2007) ("an

inadequate response to peer-to-peer disability discrimination is actionable under § 504"); *Biggs v. Bd. of Educ. of Cecil Cnty.*, 229 F.Supp.2d 437, 444–45 (D. Md. 2002) (same); *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 982 (8th Cir. 2003) (recognizing § 504 claim for failure to investigate allegations of student-against-student harassment and failure to take appropriate and effective remedial measures following notice of harassment).

ty-based student-on-student harassment under the standard articulated above.[5]

■ Applying this standard, the Court concludes that Plaintiff has adequately pled a claim of disability-based student-on-student harassment. Defendants acknowledge that Plaintiff has a qualifying disability and "has alleged that her peers bullied her because of her disability." (ECF No. 47 at 7.) Specifically, Plaintiff alleges that her peers called her names including "cripple," that other students stole the food she was permitted to have in school because of her hypoglycemia, that students sent her Snapchat messages "mocking her physical disabilities," and that on at least one occasion another student told a teacher that Plaintiff was suffering an episode of hypoglycemia after the other student had been choking her. Plaintiff alleges that her food was stolen on a daily basis beginning in September 2013, that the use of "cripple" as a "nickname" "caught [on]" among other students in around December 2013, and that overall the harassment continued from September 2013 through April 2014.

Plaintiff's further alleges that her mother informed Corwin officials of the harassment by November 2013, that at least one teacher had personal know ledge of the bullying, and that in addition to the meetings Plaintiff specifically describes, there were "daily instances of phone calls regarding the bullying." (ECF No. 43–1 at 12, ¶ 24.) Despite these communications, Plaintiff alleges, "nothing was done ... and there was no recognizable consequences or changes in behavior," and the harassment continued until she withdrew from school. (ECF No. 43–1 at 7–8.)

Taking these allegations as true and in the light most favorable to Plaintiff's claims, Plaintiff has adequately pled factual matter showing (1) harassment based on her disability, (2) that it was severe or pervasive enough to alter the conditions of her education and create an abusive environment, (3) that Corwin officials knew of the harassment, and (4) that Corwin was deliberately indifferent to the harassment.

■ As to the last element, a school is "deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648, 119 S.Ct. 1661. Here, the Court concludes that Plaintiff has' met this test for purposes of pleading, by alleging that Corwin was aware of Plaintiff's disability and the accommodations set out in her § 504 Plan, was also made aware of disability-based harassment including physical assaults and actions that interfered with the accommodations in her § 504 Plan, but allegedly took no actions to stop this harassment for approximately six months. Plaintiff's claim regarding peer harassment thus survives dismissal.

## 2. Access to Snacks

■ In its prior Order, the Court concluded that the delay in delivering Plaintiff's lunch from the school office for approximately three hours on a sin-

---

**5.** Defendants' Motion to Dismiss recognized that peer-on-peer harassment claims are "typically cognizable under Title IX," but went on to argue against Plaintiff's claim on the merits, contesting the sufficiency of Plaintiff's allegations under *Davis* and *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1246 (10th Cir. 1999). (*See* ECF No. 47 at 6–8.) Only in their Reply Brief did Defendants first argue that Plaintiff's bullying allegations are not cognizable under § 504 and should be dismissed absent a Title IX claim. (*See* ECF No. 55 at 3–4.) Thus, Plaintiff has not had an opportunity to respond. Moreover, as noted, Defendants cite no legal authority holding that Plaintiff's claim should not be cognizable under § 504. The Court therefore rejects Defendants' argument.

gle occasion did not suggest "deliberate indifference to the strong likelihood" that Plaintiff's federally protected rights would be harmed. (ECF No. 39 at 22 (citing *Powers*, 184 F.3d at 1153).) The Court remains skeptical that this single incident viewed alone can provide an inference of deliberate indifference.[6]

However, Plaintiff's additional factual allegations do sufficiently state such a claim. Specifically, Plaintiff alleges that despite the provisions in her 504 Plan and Health Care Plan directing she "[would] be allowed to eat in any class," her technology teacher refused to allow her to eat in class on a continuing basis. (ECF No. 43–1 at 10, ¶ 20.) If true, this establishes that Corwin staff had knowledge that a federally protected right reflected in Plaintiff's 504 Plan was substantially likely to be harmed, *i.e.*, through disregard for the plan by the technology teacher, and this occurred on a "continuing" basis. (*Id.*) Corwin allegedly failed to act on this knowledge to protect Plaintiff's right, allowing the claimed violation of Plaintiff's 504 Plan to continue. The fact that Plaintiff's technology teacher was or should have been aware of the contents of the 504 Plan (*see* ECF No. 43–2 at 6), and made specific statements that she would not follow its requirements because other students were not allowed to eat in class also adequately pleads an "element of deliberateness." *See Barber*, 562 F.3d at 1229. In addition, Plaintiff alleges the "daily" stealing of the food by other students and that this was not halted by Corwin staff once they were made aware of it. Given these allegations, Plaintiff has adequately stated a claim of deliberate indifference to her rights, as recognized in the accommodations of her 504 Plan. Taken in the light most favorable to Plaintiff, these facts could give rise to an inference of intentional discrimination. *See Powers*, 184 F.3d at 1153.

Defendant argues that Plaintiff's alleged facts, even taken as true, do not show that any discrimination "was *solely* by reason of her disability." (ECF No. 47 at 5 (emphasis added)); *see also Fitzgerald*, 403 F.3d at 1144. However, it is the nature of the 504 Plan that it applies solely to Plaintiff, for the exclusive purpose of protecting her rights under Section 504 and providing appropriate access to education. Thus, allegations that Defendants either intentionally failed to implement the Plan's accommodations, or knowingly allowed them to be violated, sufficiently state a claim for a violation of § 504 solely on the basis of Plaintiff's disability. Failing to implement the 504 Plan effectively denies Plaintiff the rights the statute is meant to protect. *See New Mexico Assoc. for Retarded Citizens v. State of New Mexico*, 678 F.2d 847, 853 (10th Cir. 1982) (an "education system may be found in violation of Section 504 where the entity's practices preclude the handicapped from obtaining system benefits realized by the non-handicapped"); *Kimble v. Douglas Cnty. School District RE–1*, 925 F.Supp.2d 1176, 1185 (D. Colo. 2013) ("Defendant retains a continuing obligation under Section 504 ... to protect [Plaintiff] from discrimination ... and therefore must continue to offer any accommodations or services required to ensure that [Plaintiff] is provided an opportunity for a [free appropriate public education].")

### 3. PE Classes

██ Similarly, Plaintiff's allegations regarding violations of her 504 Plan's accommodations in her PE class also adequately state a claim for deliberate indif-

---

**6.** The Court does not consider the earlier incident of August 27, 2013, because this occurred prior to adoption of Plaintiff's 504 Plan and there is no allegation that the school secretary or other staff were at that time aware of Plaintiff's hypoglycemia.

ference to Plaintiff's rights. Plaintiff's teachers at Corwin were or should have been aware of the contents of her 504 Plan, which stated she should not participate in "high impact" activities in PE. Despite those provisions, Plaintiff alleges that her regular PE teacher directed her to participate in basketball drills, then acknowledged that she knew Plaintiff "cannot do this," but instructed her to "do it anyway," suggesting she would otherwise fail the class. (ECF No. 43–1 at 12, ¶ 23.) Plaintiff also alleges her 504 Plan was disregarded when a substitute teacher instructed her to be part of a "human pyramid," either knowing this violated Plaintiff's 504 Plan or because Corwin failed to inform the substitute of the plan's accommodations.

The potential inference of deliberate indifference arising from these two isolated incidents strikes the Court as weak. However, taking the facts in the light most favorable to Plaintiff, the comments attributed to the regular PE teacher suggest deliberate disregard of Plaintiff's 504 Plan. Thus, Plaintiff has adequately pled facts making out a § 504 claim on this basis.[7]

Ultimately, because Plaintiff has pled at least one viable theory for her § 504 claim, Defendants' Motion to Dismiss that claim is denied and Plaintiff will have the opportunity to develop evidence and seek to prove facts supporting each of her factual theories and her § 504 claim.

**B. John Doe**

■■■ Plaintiff's previous complaint named a "John Doe," Defendant, the un-

known substitute teacher who directed the "human pyramid." (ECF No. 30 ¶¶ 6, 16.) Plaintiff's present Complaint identifies only two Defendants: Pueblo School District 60 and the School Board of Pueblo School District Sixty.[8] (ECF No. 43–1 at 2, ¶¶ 3–4; *see also id.* at 13–16.) Accordingly, Defendant John Doe is dismissed as a Defendant from this action pursuant to Federal Rules of Civil Procedure 15(a) & 21.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss (ECF No. 47) is DENIED;

2. Defendant John Doe is DISMISSED as a Defendant herein;

3. The stay previously entered by United States Magistrate Judge Craig B. Shaffer (ECF No. 56) is hereby LIFTED. No later than **August 16, 2016** the parties shall jointly contact Judge Shaffer's Chambers to schedule a Status Conference in this case.

---

7. Defendants argue that the "human pyramid" was not a "high impact" activity because it did not involve running and jumping. (ECF No. 47 at 9–10.) Taking the facts in the light most favorable to Plaintiff, the Court concludes that in the Health Care Plan's description of "high-impact activities such as running and jumping," running and jumping

are only examples, and that both basketball drills and the "human pyramid" could be considered "high impact." (*See* ECF No. 43–2 at 6, 8.)

8. Plaintiff's Complaint, and thus the caption, identify the district as "District 60" but the board as "District Sixty."